

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

**Olena Militinska-Lake**, an individual and a Senior Auditor of
**Department of Public Service, New York State**
175 S. Swan St., apt 9D, Albany, NY, 12210, t. 518 – 250-7550

|  |  |
|---|---|
| **Plaintiff**<br>vs.<br>**Defendants:**<br>Elatisha Kirnon, in her official capacity of Chief Diversity Officer<br>for Governor Office of Employees Relations, (GOER) State of NY<br>Doris Stout in her official capacity of<br>Director of OAAF, DPS, NY State,<br>John Scherer in his official capacity of<br>Deputy Director of OAAF, DPS, NY State<br>Timothy Canty in his official capacity of<br>Chief of OAAF, DPS, NY State<br>Christine F. Balleau in her official capacity of<br>Director of Human Recourses, DPS, State of New York<br>Thomas Congdon in his official capacity of<br>Deputy Chair and Executive Deputy of PSC, State of NY<br>Public Service Commission (PSC),<br>Department of Public Service (DPS), State of New York | Civil Case No.: 1.20-cv-443<br>**CIVIL RIGHTS**<br>**COMPLAINT** (TJM/CFH)<br>**PURSUANT TO**<br>**42 U.S.C. § 1983**<br><br>**TITLE VII OF THE**<br>**CIVIL RIGHTS ACT,**<br>**AS AMENDED**<br><br>**PENDENT**<br>**JURISDICTION**<br>**28 U.S.C. §1367** |

> Plaintiff demands a trial by: ✔ JURY _____ COURT (Select **only** one).

1.  Pursuant to Federal Rules of Civil Procedure, Rule 5.2, this action is filed "Under Seal".
2.  Plaintiff in the above-captioned action, upon information and belief alleges as follows:

### JURISDICTION

3.  This is a civil action seeking relief and/or damages to defend and protect the rights guaranteed by the Constitution of the United States. This action is brought pursuant to 42 U.S.C. § 1983. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(3) and (4) and 2201.
4.  This action is also brought pursuant to:
    Title VII of the Civil Rights Act of 1964, as amended, codified at 42 U.S.C. § 2000e *et seq.*, and the Civil Rights Act of 1991, for employment discrimination based on race, color, religion, sex or national origin.
5.  This action is also brought pursuant to:
    28 U.S.C. §1367, and
    New York Consolidated Laws, Executive Law - EXC §296
    New York Consolidated Laws, Civil Service Law - CVS § 75-b

1

## PARTIES

6. Plaintiff:     Olena Militinska-Lake
   Address:       175 S. Swan St., apt 9D, Albany, NY, 12210, t. 518 – 250-7550

7. Defendants, at all times relevant to this case, were acting in both their official capacities and in the course and scope of their authority, under color of United States Constitution and Law New York State Law, statute, ordinance, regulation, custom or usage of New York State subjects or causes.

   a.  Defendant:            Elatisha Kirnon, Chief Diversity Officer for
       Official Position:    Governor Office of Employees Relations, (GOER) State of NY
       Address:              2 Empire State Plaza, Albany, NY, 12223

   b.  Defendant:            Doris Stout
       Official Position:    Director of OAAF, Department of Public Service (DPS), NY State
       Address:              3 Empire State Plaza, 6th Floor, Albany, NY, 12223

   c.  Defendant:            John Scherer
       Official Position:    Deputy Director of OAAF, DPS, NY State
       Address:              3 Empire State Plaza, 6th Floor, Albany, NY, 12223

   d.  Defendant:            Timothy Canty
       Official Position:    Chief of OAAF, DPS, NY State
       Address:              3 Empire State Plaza, 6th Floor, Albany, NY, 12223

   e.  Defendant:            Christine F. Balleau
       Official Position:    Director of Human Recourses (HR), DPS, State of New York
       Address:              3 Empire State Plaza, 16th Floor, Albany, NY, 12223

   f.  Defendant:            Thomas Congdon
       Official Position:    Deputy Chair and Executive Deputy of Public Service Commission (PSC) NY
       Address:              3 Empire State Plaza, 20th Floor, Albany, NY, 12223

   g.  Defendant:            Public Service Commission (PSC), Department of Public Service (DPS)
       Official Position:    State of New York Government Agency
       Address:              3 Empire State Plaza, 20th Floor, Albany, NY, 12223

5. Venue is invoked pursuant to 28 U.S.C. s 1391.
6. Defendant's conduct is discriminatory with respect to the following (check all that apply):

   (A)___✔___My race or color.
   (B)_____My religion.
   (C)_____My sex (or sexual harassment).
   (D)___✔___My national origin.
   (E)_____My pregnancy.

(F)_____Other: _____.

7.   The conduct complained of in this action involves:
    (A)____✔____Failure to employ.
    (B)_____Termination of employment.
    (C)____✔____Failure to promote.
    (D)____✔____Unequal terms and conditions of employment.
    (E)_____Reduction in wages.
    (F)____✔____Retaliation.
    (G)____✔____Other acts as specified below:
        Harassment based on National origin and race

## INTRODUCTION

8.   Plaintiff, Olena Militinska-Lake (Ms. Lake, Olena Lake, Olena), is an American citizen, Naturalized 04/25/2007, of Ukrainian origin. Ms. Lake is fluent in English; however, English is not Ms. Lake's native language. Plaintiff's native languages are Ukrainian, Russian.

9.   Plaintiff was graduated from SUNY, Albany, in 2007 with Master of Science degree in Accounting, in 2008 with Master of Science degree in Taxation. Before that, Plaintiff has been graduated with Master of Science degree in Economics / Political Economy from Kiev State University. Plaintiff also attended SUNY Ph. D. program in Information Science in 20017 – 2008 till ABD level.

10. Plaintiff is employed by Defendant, DPS, since April 23, 2009 in a position of Senior Auditor, salary Grade 18.

11. During her 10 years of State Service, Plaintiff was given only satisfactory evaluations, was named as one of the best auditors, valuable contributor in OAAF Director's Memorandums, evaluations of Supervisor and praised at Annual Seminars for projects' achievements.

12. On November 8, 2018, Plaintiff was awarded the 10-year dedicated service Certificate on PSC Award Ceremony conducted by Thomas Congdon, Deputy Chair and Executive Deputy.

13. On November 9, 2018, around 5 pm, unexpectedly, Plaintiff was handed the Notice of Suspension (Notice) by Mr. Thomas Congdon, Deputy Chair and Executive Deputy, accompanied by Director of Human Resources, Ms. Christine F. Balleau, and Associate Director of Human Resources, Mr. Roger Halbfinger, acting under color of law. The Notice informed: "effective immediately you are suspended without pay due to acts of discriminatory conduct and the use of racially discriminatory terms."

## FACTS

14. On March 18, 2014, Mr. Shang Hongbing (Jerry), Plaintiff's co-worker of higher Grade with Supervisory responsibilities, prior and future cube neighbor, committed a brutal harassing attack on Plaintiff based on her national origin. That day, after annexation of Ukrainian Crimea by Russian Federation (RF) on March 16, 2014, Mr. Shang met Plaintiff (with water jar in one hand and cup in another) in narrow corridor, blocked her exit, and started making T-signs (timeout) in front of Ms. Lake's face, almost hitting it, if not turn. Mr. Shang was proclaiming: "You are Ukrainian, you must not like what Putin did to Ukraine, But I like it because China supports Putin!" Out of shock, Plaintiff, silently, was barely able to escape his attack. Plaintiff reported to Director this attack and Mr. John Huang's (resigned) jokes in the same matter. Director and HR did not take this matter seriously, as it required by Due Process in Employees

3

Handbook, and nothing was placed into neither Mr. Shang, not Mr. Huang's, profile. Plaintiff was deeply insulted personally with Mr. Shang's aggressive gestures. Plaintiff was even more insulted for all Ukrainians, whose wound is very deep with that annexation and the following war. Plaintiff was not less insulted as a naturalized American, whose citizenship is also subjected to the Oath to America, its interests and constitution, not to China, and Ms. Lake takes it seriously.

15. This harassment, however, was soon turned against Plaintiff by OAAF Director, Ms. Stout, in core Memo dated 10/15/2015, where it was reflected as Plaintiff's "particularly hateful note apparently addressed at his Chinese roots … considered a form of harassment based on his ethnicity … prohibited behavior … indication of harassment" for Plaintiff's reminder of Naturalization Oath, as a prerequisite for citizenship, and a citizenship as a requirement for Government employment.

16. This reaction of OAAF Director constitutes a retaliation on Plaintiff's report of Mr. Shang's harassment and as such violates the Plaintiff's civil rights, protected by Title VII of the Civil Rights Act, as Amended. It also violates Due Process for employment-related decisions, in regulations, use and custom, and Plaintiff's constitutional rights of free speech in protection of public interests in those regulations, use and custom, patronaged by Plaintiff's thoughts and feelings not controlled by working for Employer time, and influenced Plaintiff's actions, protected by First, Fifth and Fourteenth Amendments It also violates New York Consolidated Laws, Executive Law - EXC §296, Civil Service Law - CVS § 75-b.

17. In such capacity of retaliation this core Memo from October 29, 2015, and further discriminative developments and actions against Plaintiff existed till today, 04/15/2020. After this event, the deterioration of Plaintiff's career and well-being in the Office began and her position on the Organizational Chart was frozen at the bottom. On the other hand Mr. Shang was successfully supported in his career advancement.

18. Plaintiff was rotated out of prestigious major Utility sector to smaller sector early 2015 after Ms. Lake's significant findings in Sandy Storm audit in the major Utility were unexpectedly and abusively rejected by OAAF Deputy Director. Later that year Plaintiff informed management about misleading calculation for required conclusion from major Model of Rate Cases and proposed much better, automated, multi-year, visualized with charts Model, better serving for that conclusion, as an addition to the Model in use. Plaintiff's proposal was wrongfully rejected, the modeling and even talk about Plaintiff's already proposed Model was forbidden. Ms. Lake, late 2015, was moved out from mainstream knowledge and promotions, out of Rate Cases, to non-regulated sector, questions about which never appear on promotional exams, thus limiting Plaintiff's promotion.

19. Mr. Shang, however, was granted management approval to use Ms. Lake's Model calculation, forever rejected by Deputy Director to Ms. Lake, in Mr. Shang's internal training of Staff in 2017th seminars series – a significant point in advancing Mr. Shang's career.

20. Early 2018 Plaintiff discovered in the new Audit sector and reported the significant flaw in the Audit Methodology, used for 7 prior years, by prior Account Executive, successfully promoted out of that sector. This flaw prevents any meaningful Audit findings, which explicitly appeared in re-opened at that time Audit, gained special attention in 2018 after Independent Auditor revealed substantial deficiency, not identified by any of three prior Auditors of much higher Grade, working on this Audit sequentially during 6 prior years, using prior Method.

21. When Plaintiff assessed that new Methodology will come to results, close to Independent Auditor, Director OAAF gave Ms. Lake extremely unrealistic time frame 2-3 weeks, not substantiated by any necessity, to complete the recently re-opened Audit, which no one of three prior Auditors were able to complete during 6 prior years, even without findings. Early

4

November 2018, close to completion of the Audit, Plaintiff confirmed substantial findings and three days before its completion Plaintiff was suddenly suspended from work with attempted termination without any attempts from management to secure and transfer Ms. Lake's work.

22. Along Plaintiff's successful work and fruitful projects in 2015 - 2017, despite Plaintiff's difficult time second half of 2014 first half of 2015 fighting for life against deadly life condition, the destructive and disgracing activity was developing against Plaintiff. Multiple Memorandums, emails, and notes, contradictive and controversial, floated the Plaintiff's profile, inducing multiple counselling of Plaintiff, two Interrogations, Plaintiff's subjection to psychological evaluation with attempt to place Ms. Lake on 1-year Leave of Absence with potential further termination. That mental harassing activity continued until Plaintiff, using State available information on discrimination and harassment, proved to HR that those actions may constitute the discrimination and harassment, and requested HR to open the investigation following the rules of Employees Handbook.

23. Investigation of Mr. Eng, Affirmative Officer of that time, was not in favor of Plaintiff, as Mr. Eng limited his investigation only to the latest 2016 promotion and was looking for harassment's signs in discrimination matters - originally doomed to failure. Even though, the aggressive Plaintiff's harassment shortly stopped.

24. Mr. Shang, meanwhile, became Plaintiff's cube neighbor again beginning of January, 2017, after some internal relocations. At that time Mr. Shang was preparing for his next career step to Grade 27 with higher position on the Organizational Chart. Mr. Shang was given more Supervisory responsibilities, overseeing more subject matters and being, yet unofficial, Account Executive of one of the major Utility.

25. Plaintiff, surprisingly, noticed that Mr. Shang during phone conversations with overseen Utility was switching to the other language, most likely native language (his language). After naming the Utility Executive on the phone he became pronouncedly friendly in his language. Mr. Shang was naming the people in the office, then, talking in his language, was laughing and giggling. Or, he was using the professional terminology and again his own language.

26. Plaintiff knows that conversations with Utility are very restrictive, they are part of Policy of Confidentiality, as DPS work is confidential until it is made public.

27. At some conversation Mr. Canty hold with Mr. Shang in presence of Plaintiff, Mr. Shang said: "I will tape her conversations in Russian", which was a discriminative and harassing statement, considering that Plaintiff has no one to talk business in Ms. Lake's native language. Mr. Canty did not stop Mr. Shang, nor made any warning to him.

28. Plaintiff tried to clarify the subject once with Mr. Canty, he called Ms. Nissen, former HR Director, who assured Mr. Canty that there is no Language Policy in PSC. Then, tossing the terminology confirmed again, that there is no "English only". Shockingly, those two are mixed in understanding, even though they are different. One is discriminative, another one is not.

29. Mr. Scherer on the question from Plaintiff responded with citation "speak English at all times in workplace maybe national origin discrimination" and advised for more clarification talk to HR.

30. In that regard, Plaintiff recalled late 2013 conversation with Slavic speaking therapist for her complicated wrist fracture therapy, which needed Insurance approval for every-day visit. Even though it was private conversation in her lunch time, the Deputy Director, Mr. Scherer through her Supervisor, Mr. Higgins, forbade Plaintiff any non-English conversations in the Office, violating her Title VII of the Civil Rights Act, as Amended.

31. Thinking about the influence on public interest the discovered unawareness of differences between of Language Policy and English only Policy, overall allowance to hold secret friendly conversations between public Auditors and audited Companies Executives, Plaintiff discovered more violations. One is related to prevention of friendly relationship between the Auditor and

5

Auditee. One of prevention means, established in Auditing Standards periodic rotation of Auditors.

32. Another one is related to Ethics Law, which is lectured every year for PSC Staff and the Booklets clearly explain that: The NYS Public Service Law §§ 9 and 15, the State Ethics Law set forth in Public Officers Law §§ 73, 73-a, and 74, implemented into Department's policies, stipulates: "No employee should use or attempt to use his or her position to secure unwarranted privileges…"; "An employee should not give reasonable basis for the impression that any person can improperly influence him or her or can unduly enjoy his or her favor in the performance of official duties, or that he or she is affected by the kinship, rank, position or influence of any party or person."; "An employee should endeavor to pursue a course of conduct that will not raise suspicion among the public that he or she is likely to be engaged in acts that are in violation of his or her trust."

33. Plaintiff's concern of public interest violation raised her awareness of potential violation of public trust by secret conversations of Mr. Shang with Audited Utility in his own language, different from English, not understandable around, besides the fact that they are loud and destructive. They became very friendly, despite the requirements of Auditing Standards and violate or potentially violate 3 regulations: Language Law, requiring to hold PSC business matters in English; Policy of Confidentiality, strictly regulating the confidential work of Auditors and their conversations with Utilities; Ethics Law, requiring not to violate public trust.

34. Concerned by Ethics and other matters and knowing the misunderstanding and misuse of applicable Laws by management, and following the recommendation of Mr. Scherer about contacting HR for more clarifications, Plaintiff did that, sending description of Ms. Lake's concerns, using the occasion of 2018 Annual Assessment submission, to PSC Chairman, Ethics Officer, HR Director, in addition to her Supervisor, Mr. Reubens on 05/21/2018.

35. As a response to her submission, per Plaintiff's perception, Ethics Officer in about a month distributed the reminder of Policy of Confidentiality, with Communications with Utilities rule. No other responses followed, but conversations in the neighboring cube seized and Plaintiff understood it as a positive reaction on the reminder.

36. However, later in September, Mr. Shang's active and loud communication with audited Utility resumed. One day, on October 23, when Mr. Shang's conversation became longer and louder, Plaintiff send the email to Mr. Canty as reminder about Ethics Officer distribution of Policy and prior year discussion of Mr. Shang's secret talks in that matter. Plaintiff added the OAAF Director to this email.

37. Mr. Canty called Plaintiff in his cube and told her that she misunderstood the Policy, Mr. Shang is not required to speak English, but he will do that only in favor to Plaintiff, but at any time he decided not to do so, he is free not to do so.

38. Soon after that Mr. Shang returned back to his cube, called the Executive of audited Company and began his conversation at this time in English, starting with excuses for his English: "I need to talk to you in English now because in the neighboring cube she complained about me and will complain again and all that [abusive language]… ". Then he continued his professional conversation.

39. Plaintiff immediately send the email to Mr. Canty and OAAF Director with attempt to stop that unprofessional conversation with anticipation that he or somebody would come over and stop Mr. Shang, but there was no reaction.

40. At that time, Mr. Shang, finishing his conversation with Executive, did his "favor", saying "I am going to China soon and I feel so unlucky because that F… Ukrainian F… my day …" and long stream of that language towards Plaintiff, her complaint and his unluckiness for about 7 – 10 minutes. In those 10 minutes Plaintiff was able to experience all bouquet of feelings from shock,

6

perplexity, confusion, walking in and out of cube thinking how to stop it: send another email or rush to Mr. Canty's office and invite him. She noticed her Supervisor in neighboring cube returned from meeting and she stopped there and pointed on Mr. Shang's cube. Supervisor, Mr. Rebuses responded quietly: "I hear that". Later he told Plaintiff that he reported that language to Management Team.

41. On October 30, 2018 after long silence around harassing phone conversation, then sudden invitation to counselling session for Plaintiff, not for Mr. Shang, Plaintiff discovered that Ms.Lake was accused again in Mr. Shang's harassment and discrimination on counselling session, her nerves broke. Then, when Director unreasonably condemned her work, which she was very proud of for extreme difficulty and speed: to change methodology and to complete never finished in prior 6 years audit by 3 auditors of higher Grade, Plaintiff summarized the discriminative and harassing attitude towards her by management and said: "I am НЕГР on plantation in this Office" with historical meaning of brutality of slavery of historical time, extrapolating it on herself.

42. The complete silence reigned in the room and Plaintiff understood that something might be not as expected or not correct and attributed the silence to the last phrase "I am НЕГР on plantation". Possibly they did not like the word "НЕГР"- it sounds closed to now known N-word. Or they did not like the word "Plantation", but Plaintiff heard that on national TV from Omarosa, Trump associate, when she was escorted from the Office, so this historical analogy is in use here as well. Plaintiff explained her saying: "This was the history of this country" with meaning this is just historical reference, no underlying meaning. It was already half an hour longer than it was scheduled, so Ms. Balleau said: "We need to finish this session" and finished it normally, telling Plaintiff that she will forward her the requested links to Affirmative officers for Discrimination complaint. Ms. Balleau never did that.

43. Then, on November 9, Plaintiff was suspended and on May 20, 2019, after Arbitration, she was returned to work with backpay for entire time less 5 days for the word "НЕГР", which sounds close to now known N-word. This fact Plaintiff considers inappropriate, discriminative based on national origin and violation of her constitutional rights of freedom of speech in favor of public interests, protected by 1st Amendment and Title VII discrimination.

44. The expression was a historical reference, said by Plaintiff about herself, feeling deep moral pain from historical harassment and discrimination, public disgrace, culminated in suppression. It was not insulting nor intended to be insulting to anyone of other two Caucasian Ladies, the Directors, conducted the counseling behind the closed doors on October 30, 2018, and as such cannot be construed as derogatory language, subject to Anti-Discrimination Law punishment.

45. The word "НЕГР" was said in Plaintiff's national tongue, representing the national mentality, developed differently in under different historic, religious, educational traditions of the country. Ukraine, former URRS, former Russian Empire, which never enslaved the other nations, nationalities, nor races, besides their own. There are a well-known historical facts of privileged respect to rare representatives of African races and there is a well-known history of many famous Russians originated from African nationalities from as early in history as 1705, time of Peter the Great who adopted African boy, his god son, Abraham, later took family name Hannibal (Gannibal in Russian pronunciation), highly educated Russian eminent military engineer, general, governor of Reval (now Tallinn, capital of Estonia) and nobleman, tracing his descendants through Russians to British aristocrats, royal family of Queen Elizabeth II. His son, Ivan, was prominent Russian military leader and a great-uncle of Russia's most famous and beloved poet, Alexander Pushkin, who raised his voice against tsar and the slavery of Russian peasants, descendants of that African boy after his starring in Russia appeared among British aristocrats, including the royal family, a cousin of Queen Elizabeth II. The history of USSR

gave another example of privileged respect to African Americans, attracted by new opportunities and immigrated there for better life, which became their core propaganda against America with its racial intolerance.

46. It is well-known in linguistic psychology what is a native language – the initial inerasable picture of the world, reflected in deep words meaning. If the word "НЕГР" was absorbed in its respectful meaning at childhood, it never will have any negative connotation at any time of life, no matter how many restrictions will be posed on it later. The inner meaning will be the same, positive and respectful. So, it was impossible that word "НЕГР" was used by Plaintiff in a any negative connotation. In that phrase it was used as a reproof for bad treatment of Plaintiff now as it was then at historical times. It was a bad treatment, not a bad person meaning.

47. The re-phrase Plaintiff's statement into "not a НЕГР on plantation" is a false, bordering with Defamation of Character. That phrase has different, negative refusing meaning "I will not do that because I am not НЕГР" rather than reproofing in bad treatment of good people. It was very inappropriate for American Arbitration Association under New York governing law to pick up and use the phrase out of Plaintiff's context.

48. Chief Diversity Officer of GOER, Elatisha Kirnon, refusing to open the investigation in September 2018 for Plaintiff reasonable request and Due Process established for State Employees, was actively supported Plaintiff's Suspension, by investigating against Plaintiff - that makes a good cause to believe that Defendant pursued personal racial agenda, being representative of other than Plaintiff race.

49. Considering all Plaintiff's arguments, proving that the allegation is inappropriately taken out of context, and national origin meaning and the requirement of Anti-Discriminative Law for employers to be thoughtful when applying or asserting the national origin discrimination, the initial accusation of use "racially discriminatory term" and the actions in that matter, of Director of HR, Associate Director of HR and Deputy Chair, their support by Elatisha Kirnon, Chief Diversity Officer of GOER are inapplicable to Plaintiff, they violate the Title VII of the Civil Rights Act, as Amended, and Plaintiff's constitutional right to freedom of opinion expression in public interest, protected by 1st Amendment in addition to violation of Due Process, protected by 5th and 14th Amendments.

## CAUSES OF ACTION

50. Causes of actions in this Complaint were considered under the following premises:

51. Defendant, Department of Public Service, DPS, is a Government Agency, whose primary concern is to properly Serve the Public and its Interest. Their serving processes get performed through Rate Cases, other Cases, Petitions and other elements of Government Due Process. Thus, any action of DPS, internal or external, is related to Public Interest and adherence to Government of New York Due Process.

52. Plaintiff is employed by DPS, Staff for Public Service Commission, thus Plaintiff's concerns of improper actions of DPS are related to some extent to Public Interest and adherence to Government of New York Due Process as time, efforts, decisions, results are in a stream of the main mission and main serves subordinated to public expectations of proper Due Process

53. Plaintiff's feelings, brain function, considerations, decisions, and resulted in actions, are not controlled by Employer's, DPS, time.

## FIRST CAUSE OF ACTION
### (42 U.S.C. § 1983: FREE SPEECH, First Amendment
### 42 U.S.C. § 2000e *et seq.* TITLE VII of the Civil Rights Act of 1964, as amended)

8

**Defendants: Doris Stout, John Scherer, Timothy Canty**

54. Plaintiff realleges and incorporate the allegations set forth in the preceding paragraphs as though fully set forth hereat.

55. Plaintiff alleges, that at all times relevant herein Defendants violated Plaintiffs' First Amendment rights to defend the public interest and be free from organized and supported retaliation in that matter in violation of Constitutional right, protected by 1st Amendment; Title VII of the Civil Rights Act, as Amended, New York Consolidated Laws, Executive Law - EXC §296, Civil Service Law - CVS § 75-b

56. Plaintiff alleges, that at all times relevant herein, the Defendants, by acting inappropriately violated as set forth herein, constitutional rights protected by First Amendment by organizing the retaliation for Plaintiff attempts to defend the public interests and trusts: in unbiased government decisions, not affected by secret conversations of employees in the Office of Accounting Audits and Finance, Department of Public Service; in correctness of model and calculations effected government decisions.

## SECOND CAUSE OF ACTION
### (42 U.S.C. § 1983: DUE PROCESS, Fourteenth  Amendment
### 42 U.S.C. § 2000e *et seq.* TITLE VII of the Civil Rights Act of 1964, as amended)
### Defendants: Doris Stout, John Scherer, Timothy Canty
### Christine F. Balleau, Roger Halbfinger, Thomas Congdon, Elatisha Kirnon

57. Plaintiffs reallege and incorporate the allegations set forth in the preceding paragraphs as though fully set forth hereat.

58. Plaintiff alleges, that at all times relevant herein Defendants Incorrectly applied the Anti-Discrimination Law in violation of Title VII of the Civil Rights Act, as Amended, depriving Plaintiff of constitutional right of Due Process, protected by Fourteenth Amendments.

59. Plaintiff alleges, that at all times relevant herein, the Defendants by acting not acting in accordance with Due Process deprived constitutional rights protected by Fourteenth Amendment to property associated with employment Plaintiff's reasonable advancement career, respect and dignity in employment, without emotional stresses, verbal abuses, disrespect and insults.

60. Plaintiff during years of life acquired a lot of intangible property: analytical, logical technological skills, education for which Plaintiff paid not only monetary value but also the most important value – her lifetime. Violation of Due Process induces the improper treatment of that property by inadequate exploiting it by Plaintiff's employer: eliminating it by ignoring, ruining by diminishing expectation, humiliating by discrimination - destroys the value of this property; not using this property is leading to loosing its value, which is an equivalent to ruining a tangible property.

## THIRD CAUSE OF ACTION
### 61. (42 U.S.C. § 1983: DUE PROCESS, Fourteenth  Amendment
### 62. 42 U.S.C. § 2000e *et seq.* TITLE VII of the Civil Rights Act of 1964, as amended)
### Defendants: PSC, DPS

63. Plaintiff alleges, that at all times relevant herein, the Defendant did not act appropriately and necessarily to prevent the violations set forth herein, related to constitutional First and Fourteenth Amendments. This violation allowed Agencies: Department of Public Service under the Public Service Commission, acting under the New York State and United States Law, did not provide the necessary Due Processes to enforce the use, custom and regulations within the entities and Agencies under its patronage of Law in various forms, including, but not limited to

9

trainings, regulations, setting responsibilities and accountabilities for the actions of their authorities to prevent violations depriving New York State employees during their employment with New York State their constitutional rights of entitlement to properties of dignity and values of reputation; to the rights of liberty without retaliation; to their rights to properly serve the public interest, patronaging those with their applicable skills, education, experience without forceful infringement of those or their reputation.

64. I filed charges with Equal Employment Opportunity Commission regarding the alleged discriminatory acts on or about:

09/30/2019
(Provide Date)

65. The Equal Employment Opportunity Commission issued a Notice-of-Right-to-Sue letter **(copy attached)** which was received by me on or about:

01/17/2020
(Provide Date)

66. The plaintiff is an employee within the meaning of 42 U.S.C. § 2000e(f).
67. The defendants are an employment agency or labor organization within the meaning of 42 U.S.C. § 2000e(b), (c), or (d).
68. The defendant(s) is (are) engaged in commerce within the meaning of 42 U.S.C. § 2000e(g).

## PRAYER FOR RELIEF

**WHEREFORE,** plaintiff request that this Court grant the following relief:

a) Enter judgment against the defendant;
b) Enter a declaratory judgment declaring the acts of the defendant to be a violation of Plaintiff's constitutional rights to Freedom of Speech and Due Process;
c) Eliminate double standards and favoritism for any nationalities and races;
d) Declare the equality among State employees of all and any nationalities of any or no "color" races;
e) Eliminate any discrimination against any nationalities and races from any other nationalities and races;
f) Remove all the negative and other inappropriate records from Plaintiff's employment records caused by Defendants actions as set forth in this Complaint;
g) Assure the appropriate trainings with Law study and application to the level necessary to avoid such inappropriate actions any time further;
h) Restore Plaintiffs reputation, ruined by inappropriate actions as set forth in this Complaint;
i) Award Plaintiff costs, interest and other reasonable and nominal fees for this action pursuant to 42 U.S.C. §1988 and other relevant statutes;
j) Order such other and further relief as the Court deems just and proper under the Circumstances;
k) For such other and further relief as the Court may deem just and proper.

I declare under penalty of perjury that the foregoing is true and correct.

DATED: _____ 04/16/2020 _____

Olena Lake
Signature of Plaintiff



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Buffalo Local Office

Olympic Towers
300 Pearl Street, Suite 450
Buffalo, NY 14202
(716) 551-4442
TTY (716) 551-5923
FAX (716) 551-4387

Olena Militinska-Lake
175 South Swan Street, Apt. 9D
Albany, NY 12210

Re:   EEOC Charge No.: 525-2020-00209
      Olena Militinska-Lake v. NYS Public Service Commission

Dear Ms. Militinska-Lake:

The Equal Employment Opportunity Commission (hereinafter referred to as the "Commission"), has reviewed the above-referenced charge according to our charge prioritization procedures. These procedures, which are based on a reallocation of the Commission's staff resources, apply to all open charges in our inventory and call for us to focus our limited resources on those cases that are most likely to result in findings of violations of the laws we enforce.

In accordance with these procedures, we have evaluated your charge based upon the information and evidence submitted. You allege that you were targeted and suspended for complaining about discrimination and given a mediocre performance evaluation in retaliation for complaining and because of your national origin/Ukrainian and your age over 40.

The majority of your claims are over the 300 day statute of limitations, occurring 2018. Based upon an analysis of the information submitted to us, the Commission is unable to conclude that the information establishes a violation of Federal law on the part of Respondent. This does not certify that Respondent is in compliance with the statutes. No finding is made as to any other issue that might be construed as having been raised by this charge.

The Commission's processing of this charge has been concluded. Included with this letter is your Notice of Dismissal and Right to Sue. Following this dismissal, you may only pursue this matter by filing suit against the Respondent named in the charge within 90 days of receipt of said notice. Otherwise, your right to sue will be lost. Please contact Federal Investigator Maureen C. Kielt at (716) 431-5016 if you have any questions.

Sincerely,

Date:   JAN 17 2020

Jennifer A. Carlo, Acting Director
Buffalo Local Office

EEOC Form 161 (11/16)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

To:  Olena Militinska-Lake
     175 South Swan Street apt 9D
     Albany, NY 12210

From:  Buffalo Local Office
       300 Pearl Street
       Suite 450
       Buffalo, NY 14202

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 525-2020-00209 | Maureen Kielt,<br>Investigator | (716) 431-5016 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐  The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐  Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐  The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐  Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒  The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

☐  The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐  Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

_Jennifer A. Carlo/MK_                          JAN 17 2020

Enclosures(s)                  Jennifer Carlo,                 (Date Mailed)
                        **Acting Local Office Director**

cc:    Christine F. Balleau
       **Director of Human Resources**
       **NYS DEPARTMENT OF PUBLIC SERVICE**
       Three Empire State Plaza, 16th floor
       Albany, NY 12223

Enclosure with EEOC
Form 161 (11/16)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA),
the Genetic Information Nondiscrimination Act (GINA), or the Age
Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within
90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-
day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to
consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell
him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely
manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as
indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction.  (Usually, the appropriate
State court is the general civil trial court.)  Whether you file in Federal or State court is a matter for you to decide
after talking to your attorney.  Filing this Notice is not enough. You must file a "complaint" that contains a short
statement of the facts of your case which shows that you are entitled to relief.  Courts often require that a copy of
your charge must be attached to the complaint you file in court.  If so, you should remove your birth date from the
charge.  Some courts will not accept your complaint where the charge includes a date of birth.  Your suit may include
any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters
alleged in the charge.  Generally, suits are brought in the State where the alleged unlawful practice occurred, but in
some cases can be brought where relevant employment records are kept, where the employment would have
been, or where the respondent has its main office.  If you have simple questions, you usually can get answers from
the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint
or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back
pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.  For
example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit
before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008.  This time limit for filing an EPA
suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.
Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA
claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION    --    Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction
in your case may, in limited circumstances, assist you in obtaining a lawyer.  Requests for such assistance must be
made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your
efforts to retain an attorney).  Requests should be made well before the end of the 90-day period mentioned above,
because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any
questions about your legal rights, including advice on which U.S. District Court can hear your case.  If you need to
inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide
your charge number (as shown on your Notice).  While EEOC destroys charge files after a certain time, all charge files
are kept for at least 6 months after our last action on the case.  Therefore, if you file suit and want to review the charge
file, **please make your review request within 6 months** of this Notice.  (Before filing suit, any request should be
made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*